## J. M. ELAM, Under Tutor, *v.* MRS. NOLAN.

The defendant, a tutrix, made a declaration of her intention to change her domicil from the parish of West Baton Rouge to New Orleans. The declaration was filed and recorded, and a copy served on the under tutor, who, in answer, set up various grounds on which he prayed that the tutrix be decreed to be unworthy to retain the tutorship; that the order confirming her as natural tutrix be rescinded, and that if deemed worthy, she be appointed dative tutrix, on giving security, &c., &c. *Held:* that these issues presented to a simple declaration of intention for a change of domicil, which the party had a clear right to make, are utterly inadmissible, and has no parallel in the jurisprudence of this State.

C. C. 43, 327, 341, 350, 351.

APPEAL from the District Court of West Baton Rouge, *Robertson,* J. *M. & H. H. Taylor* and *Graves,* for Mrs. *Nolan,* appellant. *Elam,* under tutor, *pro se.*

VOORHIES, J.   The defendant, *Louisa Jane Russell,* widow of *John M. Taylor,* contracted a second marriage with *John Nolan,* in the month of April, 1852. She had by her former marriage two children, *Emma L.* and *Mary F. Taylor,* both being still minors.   On the 31st of August, 1852, *John Nolan* died testate, leaving nearly the whole of his large estate to his wife *Louisa* and her two children. The heirs of the testator brought suit to annul his will on various grounds. *James M. Elam* was appointed tutor *ad litem* to represent the minors.   That suit terminated in a compromise between the parties, authorized by a family meeting as to the minors, which was homologated on the 24th of December, 1853.   On the 10th of December, 1853, the widow was confirmed as natural tutrix of her minor children, and *James M. Elam* was appointed their under tutor.   ♦

On the 22d of January, 1854, the *Widow Nolan* presented to the Judge *a quo* a declaration in writing of her intention to change her domicil from the parish of West Baton Rouge to the parish and city of New Orleans, praying therein that the Judge should order the same to be filed and recorded according to law.   The Judge ordered the declaration to be filed, and a copy served on *James M. Elam,* as under tutor of the minors, to show cause why the application should not be granted.

The under tutor filed an answer, in which he recognized the right of the tutrix to remove from the State with her children and their funds, but averred that her children had no guarantee in the faithfulness of her administration of their estate resulting from the mere presumption of natural affection.   After setting forth in his answer the grounds urged in the suit for the nullity of the will, and the proceedings which led to the compromise, the under tutor avers that on the trial of his opposition to its homologation, the tutrix offered in evidence the petition in the suit of nullity, and opposed the introduction of evidence to negative the charges therein set forth against her.   That if the interest of the

ELAM
v.
NOLAN.

minors required that such serious charges against her 'should remain uncontradicted, then she was unworthy of the trust as their tutrix, and should be removed therefrom. But in case a different opinion should prevail, then he avers that her appointment as natural tutrix is illegal and void; that if retained as tutrix, it should be only as dative, on giving security for the faithful administration of the funds to be received for the minors under the compromise, inasmuch as there is reason to believe that she intends to withdraw from the jurisdiction of the District Court of West Baton Rouge; that her right, which had been forfeited, to be retained as natural tutrix, depended·on a family meeting, which had not been obtained. He concludes by praying that she be decreed to be unworthy to retain the tutorship; that the order confirming her as natural tutrix be rescinded, and that, if deemed worthy, she be appointed as dative tutrix, on giving security. He also prays that *Henry W. Allen, William Nolan* and *John T. Nolan* be enjoined from paying her the amount of their indebtedness to the minors under the compromise.

The injunction was granted as prayed for, and the parties ordered to deposit the amount thus stated in the Branch of the Louisiana State Bank at Baton Rouge, subject to the order of the court.

The widow pleaded her domicil in abatement, and also moved for the dissolution of the injunction, with damages. Both of which having been overruled, she filed an answer to the under tutor's demand, in which she denies that she ever took a rule on him to change her domicil, as such a proceeding is unknown to the law. . She avers that she has been legally confirmed as natural tutrix, and that the judgment homologating the proceedings relative to the compromise has now the force and effect of *res judicata;* and that in consequence of the illegal proceedings of the under tutor in this case, she has been prevented from receiving the funds of her wards for investment and for their support, &c. She, therefore, prays for the dissolution of the injunction, &c.

The tutrix is appellant from a judgment ordering her to make an investment of the funds of the minors, and rejecting her application to change her domicil, &c.

This case has, we believe, no parallel in our jurisprudence. A simple declaration of intention for a change of domicil, which the party had a clear right to make, and against her will, has been converted into a suit involving a number of issues which appear to us to be utterly inadmissible. "A change of domicil is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there." C. C. 43. "This intention is proved by an express declaration of it before the Judge of the parishes, from which and to which he shall intend to remove. This declaration is made in writing, is signed by the party making it, and registered by the Judge." C. C. 44. Under provisions so clear and unambiguous, it is difficult to perceive how proceedings, such as are presented in this case, could possibly have been ingrafted on the appellant's declaration, made merely for the purpose of proving her intention to change her domicil, the effect of which could in no manner whatever have impaired the rights of the minors.

But admitting, for argument sake, that this anomalous mode of proceeding may be justified, has the under tutor presented such a case as warrants the judgment rendered against the appellant? We think not. It is made the duty of the tutor, whether by nature, by will, by the effect of the law, or by the appointment of the Judge, to administer the estate of his ward as a prudent administrator would do, otherwise to be responsible for damages. C. C. 327. The

rules by which he is to be govered are to be found in section x, title viii of the Civil Code. We are not aware of any provision of law which authorizes the Judge to order the tutor to make an investment of the minor's funds, under such a state of facts as is presented in this case, or to enjoin the payment of such funds to the tutor. The tutor, it is true, is bound to make an investment of the revenues exceeding the expenses of the minor, whenever such revenues exceed $500. But the only penalty which he incurs for the inexecution of the obligation thus imposed upon him, is fixed by the law, i. e. the payment of legal interest on such excess. C. C. 341; Session Acts of 1825, p. 198, § 1. His neglect to make such investment does not, in our opinion, involve the forfeiture of his right of administration on his ward's estate. The tutor is bound to give an account of his administration only at the expiration of his tutorship. We do not think the Judge has any authority, except in certain cases provided by law, to order an account to be rendered by the tutor previous to the expiration of the tutorship. C. C. 350; 8 N. S. 665; 10 L. R. 319.

It is urged by the under tutor that the rights of the minors are in danger, as he has reasons to apprehend that it is the intention of the appellant to remove from the State. The remedy in such cases is expressly provided for under Art. 351 of the Civil Code.

The appellant has strenuously pressed upon our consideration her claim for damages on the dissolution of the injunction. We do not think that her claim falls within the operation of the statutes of 1831 and 1833. Whether her claim for damages, resulting from the harsh proceedings against her in this case be well-founded or not, is a question which will have to be determined in a direct action.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed, that the injunction in this case be dissolved, reserving the appellant's right to claim damages in a direct action, the appellee to pay the costs in both courts, without prejudice to his rights for the reimbursement of the same against the estate of the minors if entitled thereto.